## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| CHELSEE BOYER, | ) | |
| | ) | |
| On Behalf of Herself and | ) | |
| All Others Similarly Situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 4:18-cv-76 |
| | ) | |
| DEW RAW, INC., D/B/A Minsky's | ) | |
| | ) | |
| Serve: | ) | |
| Ryan Wescott | ) | |
| 2551 S. 291 Hwy | ) | |
| Independence, MO 64057 | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' UNOPPOSED MOTION FOR
## PRELIMINARY SETTLEMENT APPROVAL

The parties have reached an agreement to settle this case. The settlement is fair, reasonable

and beneficial to the class members and should be readily approved. The settlement creates a

common fund of $225,000 covering **113** Plaintiffs who worked for Defendant as a server at a DEW

RAW restaurant in the region (collectively, "Plaintiffs," "the Class," or "Class members"). The

Settlement terms call for an opt-in Settlement under the Fair Labor Standards Act. The **113** total

Plaintiffs will receive notice of their right to participate in the settlement and their net share of the

settlement proceeds. The settlement results in a projected average gross recovery of over $1,900.00

per class member.[1]

Each class member will receive notice that provides his or her estimated net recovery so

---

[1] This number represents back pay for over 61,000 hours of work (and over 545 hours of work per plaintiff), when considering the difference between tipped wage rates and full minimum wage.

that all putative class members will be given the choice to participate or not to participate, including the right to preserve any individual claims or rights they may have against DEW RAW.

## I.    Facts and Procedural History

The Named Plaintiff Chelsee Boyer brought a lawsuit under state and federal wage law for alleged improperly paid wages while working as a server at a DEW RAW restaurant. Plaintiff sought relief on behalf of a putative class consisting of Defendant's current and former servers at DEW RAW restaurants. The parties conducted a detailed review of the facts and circumstances underlying Plaintiff's allegations, including individual analysis of putative class members' time and pay records for the statutory period, Defendants' practices and policies, and other information, when the case settled at mediation, with experienced wage and hour class mediator Joseph Eischens, in Kansas City. The review included a review of hundreds of documents, including years of time and pay records and restaurant sales logs, and other information. After a full day of negotiations, the parties were able to reach an accord that summarized the basic terms of this settlement.

Named Plaintiff and class counsel believe the claims asserted in the Litigation have merit and that the evidence developed to-date supports the claims asserted. Plaintiffs and counsel, however, also recognize the risk and expense of trying and, if necessary, appealing a complex case like this action, and believe that the Settlement confers substantial benefits upon the class members. Defendant denies Plaintiffs' claims have any merit and deny any wrongdoing, but wish to avoid the uncertainty and risk attendant with further litigation.

The main terms of the agreement are as follows:

- The settlement creates and makes available a common fund of $225,000 to settle the claims of the approximately **113** class members;

- Detailed notices will be provided to class members after preliminary approval of

settlement apprising class members of, among others:

- o their individual settlement amounts,
- o their right to participate in the settlement if they so wish,
- o and the procedure for claiming monies;

- Non-named settling Plaintiffs will only release wage and hour claims arising out of their work as servers at a DEW RAW restaurant;

- Attorneys' fees will comprise one-third of the fund;

- Costs will total approximately $2,150.00;

- Settlement administration costs will be borne by Defendant;

- The Named Plaintiff will receive a service award of $15,000.00 for the service that she provided during the litigation, and in exchange for a general release of all claims.

The settlement agreement is attached as Exhibit 1.

## II. Question Presented

Should the Court grant Plaintiffs' motion to approve the settlement of this case when the settlement is fair, reasonable and provides an immediate, significant benefit to the class members who affirmatively chose to participate, and ends contested litigation prior to trial?

## III. Argument

### A. Approval of the FLSA Class Settlement

The standard for court approval is straightforward under the FLSA: a district court should approve a fair and reasonable settlement if it was reached as a result of contested litigation to resolve a bona fide dispute under the FLSA. *Garcia v. Triumph Foods*, Case No. 11-6046-CV-SJ-ODS (W.D. Mo. July 12, 2012) (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982)). First, the court must be satisfied that the settlement was the product of "contested litigation." *Id.* (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1353). Second, the court must inquire as to whether the settlement involves a fair and reasonable resolution of a bona fide dispute

between the Parties under the FLSA. *Id.* Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in an arms'-length settlement as *indicia* of fairness. *Id.* If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.* Plaintiffs respectfully submit that this Court should conclude that the parties' settlement is a reasonable resolution of a *bona fide* dispute in contested litigation.

This settlement was the product of arm's-length negotiations by experienced counsel and provides meaningful, significant, monetary relief to all party Plaintiffs. It also eliminates the very real and inherent risks both sides would bear if this complex litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness should attach to the proposed settlement. *See Lynn's Food Stores*, 679 F.2d at 1354 (courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness); *see also In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery") (citations omitted).

The litigation was contested and settled after a full day of negotiations with experienced wage and hour mediator Joseph Eischens. Only after significant, intensive document exchange, data analysis and shuttle diplomacy via the mediation process, were the parties able to reach an accord. Serious questions of fact and law existed that placed the ultimate outcome of the litigation in doubt.

The settlement offers a significant payment to the Plaintiffs and participating class

members now. Participating class members will receive meaningful awards after costs and attorneys' fees depending on the amount of time worked in a covered position. Further, if the settlement is not approved, any recovery through litigation may not occur until after years of litigation and appeals. Or, such recovery may not occur at all after trial and appeal. For these reasons, settlement approval now should be highly favored. *See, e.g., In re BankAmerica*, 210 F.R.D. at 701 ("As courts have recognized, when considering settlement agreements they should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush."); *see also Lynn's Food Stores*, 679 F.2d at 1354 (public policy encourages settlement of FLSA litigation); *Little Rock School District v. Pulaski Cnty. Special School District No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.").

Accordingly, Plaintiffs respectfully request that the Court approve the settlement and order that the Plaintiffs and the Participating Class Members be paid in accordance with the terms of the settlement agreement. A proposed order granting settlement approval has been emailed to the Court, per local rules.

### 1. The Proposed Settlement Enjoys an Initial Presumption of Fairness

"The law strongly favors settlements. Courts should hospitably receive them." *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990) (noting that it is especially true in "a protracted, highly divisive, even bitter litigation"); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."). This preference

is particularly strong "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)).

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 Newberg on Class Actions§ 11.41; *see also Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) ("A settlement agreement is 'presumptively valid.'") (quoting *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)). After the parties' arm's length negotiations, "it is not for the Court to substitute its judgment as to a proper settlement for that of such competent counsel." *In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 173-74 (S.D.N.Y. 2000) (quoting *In re Warner Comm. Sec. Lit.*, 618 F. Supp. 735, 746 (S.D.N.Y. 1985)); *Sanderson v. Unilever Supply Chain, Inc.*, 10-CV-00775-FJG, 2011 WL 5822413, at *3 (W.D. Mo. Nov. 16, 2011) (crediting the judgment of class counsel experienced in FLSA cases that settlement was fair, reasonable, and adequate); *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-01413, 2008 WL 5458986, *8 (S.D. Cal. Dec. 10, 2008) ("it is the considered judgment of experienced counsel that this settlement is a fair, reasonable, and adequate settlement of the litigation, which should be given great weight."); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.").

## 2. Analysis of the Applicable Factors Favors the Settlement

To determine whether a proposed class settlement is fair, reasonable, and adequate, courts regularly consider the same factors for Rule 23 and FLSA class settlements. *Sanderson*, 2011 WL

5822413, at *3. "Those factors are the following: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery." *Id.* These factors weigh in favor of finding the proposed settlement fair, reasonable, and adequate in this case.

### a) The Extent of Discovery.

The nature and scope of pre-settlement discovery favors the settlement. The parties have performed the necessary legal, documentary and investigative work to analyze the allegations in these proceedings. Moreover, in anticipation of motion practice, trial and also of mediation, the parties undertook substantial investigative efforts and discovery of class information.

Based on the significant review of critical information, in addition to legal analyses and arguments, the parties were able evaluate the value of class members' claims and negotiate a fair settlement.

### b) The Stage of the Proceedings and the Complexity, Expense, and Duration of Further Litigation

This case is complex and carries significant risks for the parties as to both legal and factual issues, and litigating the case to trial would likely consume great time and expense. In simple terms, much of the document exchange and review that has been conducted already, including especially the review of timekeeping, payroll and other information would have to be duplicated in order for the matter to proceed forward. This would likely entail bringing together dozens of

witnesses for several days of testimony, at great expense to the parties and inconvenience to the witnesses.

As to complexity, if the parties had not reached an accord, this matter would have proceeded through class certification phases, significant discovery, followed by multiple dispositive motions and potential motions for decertification, and eventually a trial on the merits. Were the Court inclined to not certify the class, decertify the class, or grant summary judgment to DEW RAW, class members would recover nothing. Even if the case proceeded to trial, substantial legal questions affecting any potential recovery by Plaintiffs and class members remain to be resolved, including the definition of non-tip-producing activities, the extent of liability for Plaintiffs' minimum wage and tip-credit notice claims, the actual injury and entitlement of each member of the class to recover, and the measures of damages under the FLSA and state law. The uncertain disposition of the litigation, as well as these unresolved questions, creates substantial complexity and concordant risk for Plaintiffs and the class, and thus weighs in favor of the recovery guaranteed by the proposed settlement.

### c) The Absence of Fraud or Collusion in the Settlement

There is no indication or evidence of fraud or collusion in the settlement. Indeed, this litigation has been diligently prosecuted and defended. A full day of negotiations through a neutral, third party mediator, skilled in wage and hour issues, were held with experienced counsel representing both sides, further precluding any possibility of improper motive or circumstances in the filing or prosecution of the suit. All proceedings and negotiations have taken place at arm's length.

### d) The Experience and Views of Counsel

A court evaluating a proposed settlement "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) (quoting Fed. Judicial Ctr., Manual for Complex Litig. § 30.42 at 240 (3d. ed.1997)).

Although the Court is not bound by counsel's opinion, their opinion nonetheless carries weight in assessing a settlement. *Sanderson*, 2011 WL 5822413, at *3–4 (crediting experienced class counsel's belief that the settlement was fair, reasonable, and adequate). Here, the class had the benefit of attorneys who are highly experienced in complex wage and hour litigation and familiar with the facts and law in the case, and who have negotiated many such class and collective action settlements. Likewise, the Defendant retained experienced counsel that could successfully navigate complex litigation in the wage and hour context.

The negotiations in this case were hard-fought and at arm's length. In Plaintiffs' Counsel's view, the settlement provides substantial benefits to the class, especially when one considers, among other things, the attendant expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings.

### e) The Opinions of Class Members

Although at this preliminary stage, notice and opportunities to accept or otherwise respond to the settlement have not been provided to class members, the proposed settlement has been communicated to and accepted and approved by the Named Plaintiff. Importantly, all class members will have the right to exclude themselves from the settlement if they choose. Thus, the settlement allows for class members to not participate if they do not like the settlement, and any

rights and claims will remain. Likewise, the release for class members who choose to participate is a limited release, only affecting their claims that were or could have been brought in this litigation (i.e. wage and hour claims).

### f) The Strength of the Plaintiffs' Case

After thorough investigations of the facts and law, the parties have gained a comprehensive knowledge of Plaintiffs' claims and Defendant's defenses. Consequently, the parties have sufficient evidence to make an informed assessment of the merits of their positions. Based on their knowledge of the case and applicable law, as well as their experience in similar actions, the parties' counsel believe the settlement is fair, reasonable and adequate.

The parties naturally dispute the strength of the Plaintiffs' case, and the settlement reflects the parties' compromise of their assessments of the worst-case and best-case scenarios, weighing the likelihood of various potential outcomes. Plaintiffs' best-case scenario is class certification and recovery on the merits. Plaintiffs' worst-case scenario is that the class is not certified or decertified, summary judgment is granted to Defendant, and/or Plaintiffs lose at trial. Or even if the Plaintiffs were to prevail, a finding that the expert's assessed damages were overstated due to improper calculations and inappropriate extrapolation. The result is not assured for either side. The details of the settlement involved extensive negotiation and compromise. This reflects the parties' zealous representations of their respective positions on the claims and defenses, and the difficulties and risks associated with protracted litigation.

Furthermore, even if this case were to proceed to trial and Plaintiffs prevailed on the question of liability, substantial questions would remain as to the measure of damages and the entitlement of each class member to recover for alleged tip-credit notice violations and improper tip credit deductions, respectively. Although Plaintiffs believe strongly in the merits of their

claims, the great number of uncertainties in ultimately calculating class damages makes it difficult to predict how the Court would make an assessment and award.

On the other hand, the settlement proposed ensures that class members will recover proportionally to their alleged injuries. Claiming class members will receive an award proportionate to time worked over the full duration of the applicable time period. This equitable and certain recovery is highly favorable in light of the many uncertainties still pending in the litigation, and weighs in favor of approving the proposed settlement.

In sum, the settlement brings substantial and certain monetary value to class members now, rather than uncertain value to an uncertain number of people at an uncertain time after protracted litigation involving complex and changing law. While both sides believe the facts support their respective positions, Plaintiffs and Defendant reached this proposed compromise after extended settlement discussion facilitated by a mediator. The parties therefore request that the Court preliminarily approve the settlement and authorize notice to be sent to the respective class members.

## IV. The Court Should Approve the Requested Service Award

Plaintiffs seek a service payment for the named Plaintiff and early opt in ("Named Plaintiffs") who provided invaluable service to the group, totaling $15,000.00. This service provided necessary evidence for the parties, counsel, and the Court, furthering the interests of the class as a whole. The Named Plaintiff requests an award of $15,000 in recognition of her service to the class as a whole through litigation, as well as in consideration for their general release of all claims against the Defendant. Named Plaintiff worked with Class Counsel before and throughout this litigation in pursuing these claims on behalf of class members, including providing documents, evidence and testimony, and attending mediations. The Named Plaintiff is also releasing all claims

– not just wage and hour claims.

The reason for this service payment, in addition to the general release, is to ensure that those individuals who chose to participate and provided invaluable information about Defendant, its policies, procedures, and information regarding the Defendant, are compensated for the risk that they undertook in bringing this action. But for her actions, DEW RAW would have retained the benefit of its alleged failure to inform its servers properly its use of the tip credit, and its obligation to pay full minimum wage for non-tip-producing activities that exceeded the 20% limitation. The Named Plaintiff should be rewarded to encourage others who would be subject to future FLSA violations to assert their rights to fair pay under federal wage law.

The Named Plaintiff took a risk by initiating the litigation. She will forever be subject to background checks on employment applications, and there is risk that if an employer learns of their previous litigation, it may be less likely to hire her. In light of the all of this, Plaintiff respectfully requests that the incentive award be approved.

Courts recognized that the risk, time and dedication that an individual devotes to a lawsuit that inures to the common benefit of others warrants a service award above-and-beyond what the typical class member is receiving. *See Tussey v. ABB, Inc.*, 06-04305-CV-C-NKL, 2012 WL 5386033 (W.D. Mo. Nov. 2, 2012) (approving $25,000 service awards for the three class representatives); *Wolfert v. UnitedHealth Group, Inc.,* No. 4:08CV01643(TIA), at *4 (E.D. Mo. Aug. 21, 2009) (approving an incentive award of $30,000); *Matheson v. T-Bone Rest.*, LLC, 2011 WL 6268216, at *9 (S.D.N.Y. Dec. 13, 2011) (approving $45,000 service award to named plaintiff in tip pool/OT case settlement after two and a half years of litigation); *Mentor v. Imperial Parking Sys., Inc.*, 2010 WL 5129068, at *5 (S.D.N.Y. Dec. 15, 2010) (approving $40,000 service award to named plaintiff in FLSA settlement after five years of litigation); *Willix v. Healthfirst, Inc.*, 2011

WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving $30,000 service award to named plaintiff in FLSA settlement after three years of litigation); *Flores v. Anjost Corp.*, 2014 WL 321831, at *9 (S.D.N.Y. Jan. 29, 2014) (approving $25,000 service awards for five named plaintiffs in FLSA settlement after three years of litigation); *Duchene v. Michael Cetta, Inc.*, 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10, 2009) (approving $25,000 service award to named plaintiff in tip pool case settlement after three years of litigation); *Capsolas v. Pasta Res. Inc.*, 2012 WL 4760910, at *9 (S.D.N.Y. Oct. 5, 2012) (approving $20,000 service award for named plaintiff in tip credit case settlement after two years of litigation).

Accordingly, Plaintiffs' request falls within a fair range of service awards – especially considering that they are releasing any and all claims against Defendant.

## V. Plaintiffs' Application for Fees & Expenses Should be Approved

As part of the settlement, Plaintiffs request one-third of the Settlement Fund for payment as attorneys' fees in addition to reasonable and necessary expenses in the amount of approximately $2,150.00. Such fees and expenses are reasonable.

The Supreme Court has expressed a preference that the parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Here, the parties have done so because Defendant has agreed that it will not oppose up to one-third of the Settlement Fund as attorneys' fees. The Parties in this matter have also agreed to a common fund settlement. When a settlement yields a common fund for class members, fees must be paid from the recovery. *Boeing Co. v. VanGemert*, 444 U.S. 472, 481, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980). This common fund doctrine is firmly rooted in American case law. *See, e.g.*, *Trustees v. Greenough*, 105 U.S. 527 (1882); *Central R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885); *Blum*

*v. Stenso*n, 465 U.S. 886, 900 n.16 (1984).

"In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well-established.'" *In re Xcel Energy, Inc. Sec. Derivative & ERISA Litig.,* 364 F.Supp.2d 980, 991 (D. Minn. 2005). Indeed*,* courts in this Circuit routinely approve and apply the "percentage-of-the-fund" approach in awarding attorneys' fees in common fund cases. *See, e.g., Johnston v. Comerica Mortg. Corp,* 83 F.3d 241, 245-7 (8th Cir. 1996) (approving the percentage method as one method of awarding fees); *Petrovic v. AMOCO Oil Co.,* 200 F.3d 1140, 1157 (8th Cir. 1999); *In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir. 2002); *In re Xcel Energy,* 364 F. Supp. 2d at 993.

Compensating counsel in common fund cases on a percentage basis makes good sense. First, it is customary for contingent fee attorneys to be compensated on a percentage-of-the-recovery method. Second, it rewards efficiency and provides plaintiffs' counsel with a strong incentive to effectuate the maximum possible recovery under the circumstances. *See In re Xcel Energy,* 364 F.Supp.2d at 993, 996; *Kirchoff v. Flynn,* 786 F.2d 320, 325-26 (7th Cir. 1986). Third, use of the percentage method decreases the burden imposed on the Court by the "lodestar" method and assures that class members do not experience undue delay in receiving their share of the settlement.

As courts including the Eighth Circuit have routinely recognized, using a percent of the fund approach most closely aligns the interests of the lawyers with the class, since the more that is recovered for the class, the more the attorneys stand to be paid. *See Johnston v. Comerica Mortgage Co.*, 83 F. 3d 241, 244 (8th Cir. 1996) (noting that the percent of benefit approach has been recommended in common fund situations); *see also Stoneridege Inv. Partners LLC v. Charter Communs., Inc*. *(In re Charter Communs., Inc.)*, 2005 U.S. Dist. LEXIS 14772, 40-42 (D. Mo.

2005). Moreover, other Circuits express "a preference for the percentage of the fund method" in class actions. *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995); *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3rd Cir. 1998) ("[t]he percentage-of-recovery method is generally favored in cases involving a common fund"); *Swedish Hospital Corp v. Shalala,* 1 F.3d 1261, 1269, 1272 (D.C. Cir. 1993) ("concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fee award in common fund cases" and that "a percentage of the fund approach more accurately reflects the economics of litigation practice … and most closely approximates the manner in which attorneys are compensated in the marketplace for these types of cases."); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("the percentage of the fund approach is the better reasoned in a common fund case"); *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) (the percentage of the fund is "a method of more closely aligning the lawyer's interests with those of his client by giving him a stake in a successful outcome."); *Prudential Ins. Co.*, 148 F.3d at 333 (the percentage of the fund approach "rewards counsel for success and penalizes it for failure.") (citation omitted).

While "[t]he Eighth Circuit has not set forth a specific percentage benchmark to analyze the reasonableness of attorney fees under the percentage-of-the-fund method," courts in this Circuit "have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in class actions." *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1064 (D. Minn. 2010) (quoting *In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir.2002) (affirming fee award representing 36% of the settlement fund as reasonable)); *In re Xcel,* 364 F.Supp.2d at 998 (collecting cases demonstrating that district courts routinely approve fee awards between 25% and 36%); *Hernandez v. Texas Capital Bank*, Case No. 07-0726-ODS, Doc. 107 (W.D. Mo. July 14,

2009) (approving 33% of fund) (Smith, J.); *Busler v. Enersys Energy Products Inc., Case* No. 09-0159, Docs. 111 & 120 (W.D. Mo.) (same) (Gaitain, J.); *Osby v. Citigroup, Inc.,* Case No. 5:07-06085-NKL, Doc. 128 (W.D. Mo. June 22, 2009) (same) (Laughrey, J.); *In re U.S. Bancorp Litigation*, 291 F.3d at 1038 (affirming award of 36% of common fund plus expenses); *Brown v. Time Warner Cable, Inc.,* Case no. 13-0353-CV-W-BP (W.D. Mo. March 3, 2014); *Hamilton, et al. v. ATX Services Inc.*, Case no: 08-0030-SOW (W.D. Mo. May 6, 2008) (Order under seal approving attorneys' fees and expenses at 34%); *Burks*, Case No. 4:09CV1302 (MLM) (E.D. Mo. Jan. 31, 2011) (Doc. 91, p. 3, ¶ 8 & Doc. 102, p. 4, ¶ 9) (approving 33 1/3% attorney's fee award in call center wage and hour claim); *Wolfert*, Case No. 4:08CV1643 (TIA) (E.D. Mo. Oct. Aug. 21, 2009) (Doc. 37, p.2 & Doc. 38, p.4, ¶ 9) (approving attorney fee award of 33% of the maximum gross settlement amount in call center overtime claim); *EEOC v. Fairbault Foods, Inc.,* Civ. No. 07-3976, 2008 WL 879999, at *4, 2008 U.S. Dist. LEXIS 29132, at *13 (D. Minn. Mar. 28, 2008) (approving fee award of approximately 30% of the settlement fund); *Carlson,* 2006 WL 2671105, at *8, 2006 U.S. Dist. LEXIS 67108, at *22 (approving a fee award of $5,325,000 representing 35.5% of the of the $15,000,000 settlement fund); *Morak, et al. v. CitiMortgage, Inc.*, Case no.: 07-1535 (E.D.Mo. Sep. 26, 2008) (order under seal approving attorneys' fees and expenses at 33%), *Staton v. Cavo Communications, Inc.*, Case no.: 08-0273 (E.D.Mo. Jan. 14, 2009) (order under seal approving attorneys' fees and expenses at 33%) *Perry v. National City Bank*, Order Approving Settlement, Attorneys' Fees and Service Awards, Case No. 3:05-CV-00891-DRH-PMF (S.D. Ill. March 3, 2008) (approving requests for attorneys' fees and costs in the amount of thirty-three percent (33%) of the Settlement Fund); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) (approving fee award of 38.26% of total settlement fund in FLSA collective action and Rule 23 class action case).

Here, one-third of the settlement fund is well within the reasonable range of attorney fee awards. Indeed, the representation agreements between Class Counsel and the Named Plaintiff provide for fees of 40% of recovery. As a result, the requested fee percentage is below that agreed to and which represents what a lawyer can reasonably obtain from a client. Similarly, all class members choosing to participate are informed that Class Counsel will receive one-third of the fund. If the class member does not like the deal, then he or she can opt out and attempt to hire another lawyer to prosecute his or her case at a lower rate. Not only have Class Counsel obtained a good result in litigation, but by filing this case, Defendant has also remediated its sidework practices. The Court should consider this in determining the value provide to the Class.

Finally, Plaintiffs' out-of-pocket costs, which included the mediation, were reasonable and necessary. Plaintiff, therefore, requests an attorney fee award of one-third of the common fund and reasonable and necessary expenses approximating $2,150.00.

## CONCLUSION

The settlement presented is an immediate, real, substantial, and fair settlement. Plaintiffs, therefore, respectfully request that the Court approve the settlement as provided in Exhibit 1, in whole and without delay.

Respectfully submitted,

**THE HODGSON LAW FIRM, LLC**

*/s/ Michael Hodgson*
Michael Hodgson, MO Bar No. 63677
3699 SW Pryor Rd
Lee's Summit, MO 64082
mike@thehodgsonlawfirm.com
Tel: (816) 600.0117

ATTORNEYS FOR PLAINTIFFS AND THE
CLASS

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was emailed this 9th day of May, 2018 to:

Casey P. Murray MO
1000 Walnut Street, Suite 1400
Kansas City, Missouri 64106
T: (816) 474-8100
F: (816) 474-3216
cmurray@spencerfane.com

***ATTORNEYS FOR DEFENDANT***

/s/Michael Hodgson_____
Attorney for Plaintiffs